UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| MAC CONSTRUCTION AND | ) | |
|---|---|---|
| EXCAVATING, INC., | ) | |
| | ) | Civil No. 10-16-ART |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| CITY OF WARSAW, KENTUCKY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Because the plaintiff, Mac Construction & Excavating, Inc. ("Mac"), has not demonstrated that it has standing to assert its claims against the defendant, City of Warsaw, Kentucky ("Warsaw"), the Court must dismiss this lawsuit.

## BACKGROUND

The facts material to the question of standing are undisputed. On January 6, 2010, Warsaw received sealed bids for the Warsaw Waste Water and Storm Water System Improvements Project ("Project"). R. 1, Ex. 1. On January 14, 2010, the mayor of Warsaw, Travis A. Simpson, informed Mac that it submitted the lowest bid. R. 1, Ex. 3. Warsaw, however, had decided to re-bid the Project since Mac's bid exceeded the available funds. *Id.*

On January 15, 2010, Warsaw re-bid the Project, but this time Warsaw broke the Project into two separate bids for two different contracts. R. 1, Ex. 4. Contract No. 1 was for a waste water treatment plant and Contract No. 2 was for storm water system improvements. *Id.* Sealed bids could be submitted until January 25, 2010. *Id.* Mac lost both contracts. Two companies

that are not parties to this litigation, Winelco and Emmitt Caskey Construction ("Emmitt Caskey"), won the contracts. R. 1, Ex. 5. Winelco won Contract No. 1, and Emmitt Caskey won Contract No. 2. *Id.*

The instructions for the two bids required that bidders submit two U.S. Environmental Protection Agency ("EPA") forms with their bid or proposal package: (1) 6100-3, Disadvantaged Business Enterprise ("DBE") Program Subcontractor Performance Form, and (2) 6100-4, DBE Program Subcontractor Utilization Form. R. 10, Ex. 2 ("Instructions"). Neither Winelco nor Emmitt Caskey submitted these forms before Warsaw opened all of the sealed bids. R. 10, Ex. 1 ("Simpson Aff.") at 1. Warsaw allowed Winelco and Emmitt Caskey to submit these forms after the bids were opened. *Id.* at 1-2. Winelco and Emmitt Caskey submitted the forms before the execution of the contracts on February 3, 2010. R. 10, Ex. 3 ("Supp. Simpson Aff."). Mac was the only bidder, for either bid, to submit these forms before the bids were opened. R. 1 ¶ 20.

On January 29, 2010, Mac brought this action against Warsaw, alleging that Mac should be awarded both contracts since the other bids were non-responsive. *See* R. 1. Along with its complaint, Mac filed a motion for a temporary restraining order to prevent Winelco or Emmitt Caskey from starting work on the contracts. *See* R. 2. That same day, the Court denied the motion because it did not comply with Fed. R. Civ. P. 65. *See* R. 5.

On February 1, 2010, Mac filed a motion for reconsideration of its motion, R. 7, to which Warsaw responded, R. 10, and Mac replied, R. 13. Following a hearing on February 10, 2010, the Court denied the motion. R. 14. At the hearing, the parties agreed that there was diversity jurisdiction. *Id.* However, during the hearing, it was disputed whether Mac had standing to bring

this suit. *Id.* Because standing is a jurisdictional requirement, the Court asked the parties to brief the issue after a limited discovery period. R. 14 and R. 15; *see also In re Troutman Enter., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002) ("Standing is a jurisdictional requirement and we are under a continuing obligation to verify our jurisdiction over a particular case." (citing *CDI Info. Servs. v. Reno*, 278 F.3d 616, 618 (6th Cir. 2002))).

Mac filed a brief asserting that it had standing, R. 17, to which Warsaw responded, R. 18, and Mac replied, R. 19.

## DISCUSSION

Mac claims that the two winning bids were non-responsive because neither bid included the two required EPA forms. R. 1 at 6-8. Hence, Mac alleges that Warsaw awarded those contracts in an arbitrary and capricious manner. *Id.* at 8. The question here is limited to whether Mac has standing to bring these claims. The merits of the claims are only relevant to this opinion to the extent they affect the question of standing. As the plaintiff, Mac "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). To that end, Mac asserts that it has standing under state law, the Kentucky Model Procurement Code ("KMPC"), and a federal regulation, 24 C.F.R. § 85.36. Because neither the KMPC nor § 85.36 give Mac standing, this suit is dismissed.

**I.      The KMPC**

In a diversity action, federal courts apply Kentucky law to determine whether a party has standing to bring a Kentucky cause of action. *See*, *e.g.*, *Owen of Ga. v. Shelby County*, 648 F.2d 1084, 1088 (6th Cir. 1981) (applying Tennessee law to determine whether a disappointed bidder had standing to challenge the awarding action of a Tennessee county, which allegedly violated a state or local statute). Only in very limited circumstances have Kentucky courts held that disappointed bidders have standing. For a long time, a disappointed bidder in Kentucky only had standing to challenge the award of a public contract to another by showing fraud, collusion, or dishonesty. *HealthAmerica Corp. v. Humana Health Plan, Inc.*, 697 S.W.2d 946, 947 (Ky. 1985) (citations omitted). And in the instant case, there is no allegation of fraud, collusion, or dishonesty. But, Kentucky broadened standing for disappointed bidders when it adopted the KMPC. "[The KMPC] changed the rules of the game, providing access not previously available to challenge and investigate the propriety of government contracts." *Pendleton Bros. Vending Inc. v. Commonwealth Fin. and Admin. Cab.*, 758 S.W.2d 24, 24 (Ky. 1988). The KMPC expanded standing so disappointed bidders could challenge awards that were arbitrary and capricious or contrary to the law. *Ky. v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 206 (Ky. 2007) (citing *Pendleton*, 758 S.W.2d at 24).

The KMPC only applies to municipalities, like Warsaw, that explicitly adopt the code's provisions. *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 350 n.6 (6th Cir. 2006) (holding that *Pendleton* did not affect standing in jurisdictions where the KMPC was not adopted); *cf. Commc'n Sys. Inc. v. City of Danville, Ky.*, 880 F.2d 887, 890 (6th Cir. 1989)

(stating that city had adopted the KMPC). Warsaw's City Clerk searched the city's records and ordinances and concluded that the city has not adopted the KMPC. R. 19, Ex. 3 ("City Clerk Aff."). In response, Mac has not provided any evidence that Warsaw adopted the KMPC through its legislative process. Instead, Mac presents evidence that select provisions of the KMPC were incorporated into the specifications for the Warsaw projects at issue. R. 17, Ex. A at 2. As a result, the limited question in this case is whether referring to select provisions in the specifications means that Warsaw adopted the KMPC in full. No Kentucky court has answered this question. But, based on the Kentucky Supreme Court's holdings in *Pendleton* and *Yamaha*, the Court believes Kentucky's highest court would rule that Mac lacks standing under the KMPC. *See Owen of Ga.*, 648 F.2d at 1088 ("Our role in this diversity action is to determine the ruling that we believe the highest Tennessee court would adopt.").

First off, it is not clear from Kentucky precedent that Warsaw can act outside its own legislative process and adopt the KMPC by simply attaching select provisions of the KMPC in its bid specifications.[1] Even if it could, a closer look at what Warsaw included in the specifications reveals that Warsaw did not adopt the KMPC in its entirety. Among others, Warsaw omitted a key provision of the KMPC from the specifications—the protest procedure provision, Ky. Rev. Stat. § 45A.285. That provision has a marked effect on the question of standing.

---

[1] As discussed, Mac bears the burden of demonstrating standing. MAC could have demonstrated, for example, that Warsaw actually did adopt these provisions through some sort of legislative approval (i.e., Warsaw city council approved the bid specifications). Mac provided no such evidence. In any event, for the reasons stated in this opinion, even assuming these select provisions were adopted, they do not confer standing upon Mac.

5

The protest procedure provision was a critical reason why the Kentucky Supreme Court expanded standing, in light of the KMPC, for disappointed bidders. In *Pendleton*, the Kentucky Supreme Court noted that the KMPC was intended to "elevate state purchasing to a higher level of conduct." 758 S.W.2d at 27. To achieve that goal, the KMPC "imposes rules with objective criteria in purchasing, criteria previously lacking, and *provides enforcement for these standards*." *Id.* (emphasis added). The *Pendleton* court noted that "it is *the regulatory scheme* which both establishes the rules which must be followed and *provides standing to the aggrieved competitor to challenge the decision of the administrative agency in court* if he can prove that the decision or award was made in violation of the statute." *Id.* at 28 (emphasis added). Warsaw did attach some of the objective purchasing criteria from the KMPC in its specifications. For example, it attached Ky. Rev. Stat. § 45A.080, which states that the "[t]he contract shall be awarded to the responsive and responsible bidder whose bid is either the lowest bid price or lowest evaluated bid price." But the regulatory scheme in Warsaw is not the same as the one in *Pendleton,* where the Commonwealth had adopted the KMPC in full. Specifically, the provision to enforce these standards was not attached to Warsaw's bid specifications. That enforcement provision, Ky. Rev. Stat. § 45A.285(1), states that a bidder may protest "the solicitation or selection for award of a contract" to the secretary of the Finance and Administration Cabinet.[2] If Warsaw had intended

---

[2] While it may seem odd at first that a city's bidding process would be reviewed by a state agency—here the secretary of the finance and administration cabinet—such a review could be sound for two reasons. First, Warsaw could adopt the KMPC in full and subject its bidding process to Kentucky's state agencies because it hopes to or does receive Kentucky funding. Playing by Kentucky's rules is simply part of the city's bargain. Warsaw has the discretion to subject its bidding processes to the review of state agencies but, in this case, there is no evidence that Warsaw did. Second, without a protest procedure, the courts would be reviewing city actions

to adopt the same regulatory scheme as the Commonwealth has, it could have. Warsaw did not. Without that key provision, the court in *Pendleton* likely would not have expanded standing for disappointed bidders. Thus, even assuming Warsaw did adopt the provisions attached to its specifications, Warsaw did not adopt the KMPC in a way that would give Mac standing to claim the award decisions were arbitrary and capricious.

Mac argues that Warsaw cannot adopt the KMPC in part or without a protest procedure in place. There is nothing to suggest that selective adoption of the KMPC contradicts Kentucky law. Warsaw was not required to adopt *any* of the KMPC's provisions. The Sixth Circuit made this clear when it stated the following:

> Our holding is bolstered by the fact that Kentucky law expressly restricts standing in public procurement cases to local taxpayers and citizens. Such standing was left undisturbed by the Kentucky Supreme Court's ruling in *Pendleton Bros.* in jurisdictions that have not adopted the KMPC.

*Expert Masonry*, 440 F.3d at 350 n.6 (citation omitted). The fact that Warsaw chose to adopt only select provisions of the KMPC is reasonable. Warsaw's adoption of these provisions may affect taxpayer and citizen standing without affecting disappointed bidder standing. Warsaw can strategically limit the effect of the KMPC on its bidding. Mac also seems to argue that a federal regulation discussed below required a protest procedure to be in place. *See* 24 C.F.R. § 85.36(b)(12). Even if that was true, Mac has not moved to compel Warsaw to hear its protest.

---

directly. Neither *Pendleton* nor *Yamaha* suggest that the KMPC gave the Kentucky courts that type of power. *See infra* note 3 (stating that Mac's claims may not be ripe because there is no administrative decision denying its claim for the court to review). In this case, Mac has not shown that Warsaw adopted any protest procedure like the one in the KMPC. Thus, whether the protest goes to state agency for a city's bidding process does not affect the standing decision here.

7

Mac only seeks standing to have this Court review its claims. Whether or not a federal regulation required a protest procedure has no effect on the question of whether the KMPC as adopted here gives Mac standing. As the KMPC was allegedly adopted here, Mac does not have standing to assert its claims that Warsaw awarded the contacts arbitrarily and capriciously or in a manner contrary to law.

Ultimately, without a clear statement from the Kentucky Supreme Court or the Kentucky General Assembly otherwise, it is inappropriate for this Court, sitting in diversity, to extend the effect of the KMPC to Warsaw when Warsaw has not expressly adopted it and, at most, only incorporated some of the KMPC's provisions. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577-78 (6th Cir. 2004) ("This Court's proper reluctance to speculate on any trends of state law applies with special force to a plaintiff in a diversity case, like this one, who has chosen to litigate his state law claim in federal court. Furthermore, when given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." (citing and quoting Seventh and Ninth Circuit opinions)). Hence, the KMPC, as supposedly adopted by Warsaw, does not confer standing on Mac for its arbitrary and capricious claim.[3]

---

[3] Even if Warsaw had adopted the KMPC in full, Mac's claims would likely not be ripe because Mac must first exhaust its administrative remedies. In both *Pendleton* and *Yamaha*, "the administrative remedy [had] been exhausted, and the case [was] ripe for judicial review." *Pendleton*, 758 S.W.2d at 28-29; *see also Yamaha*, 237 S.W.3d at 204-05 (finding standing after the disappointed bidder had filed a protest with the Finance Secretary pursuant to Ky. Rev. Stat. § 45A.285). Under the KMPC, judicial review is only available after a protest is filed with the "[t]he secretary of the finance and administration cabinet, or his designee." Ky. Rev. Stat. § 45A.285(1). In any event, since Mac does not have standing, the question of ripeness is not reached.

## II.      24 C.F.R. § 85.36

Alternatively, Mac claims that it has standing under a federal regulation, 24 C.F.R. § 85.36. Because the general rule in the Sixth Circuit is that disappointed bidders do *not* have standing, Mac needed to show—through a legislative act—that Congress intended to give it standing. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 294 (6th Cir. 2006) ("[U]nless a party brings a suit under the APA or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, this Court will not confer standing upon disappointed bidders" (citing *Cincinnati Elec. Corp. v. Kleppe*, 509 F.2d 1080, 1085-86 (6th Cir. 1975))). Mac has not.

Generally, "[c]ourts should not, where Congress has not done so, subject purchasing agencies of Government to the delays necessarily incident to judicial scrutiny at the instance of potential sellers, which would be contrary to traditional government practice and would create a new concept of judicial controversies." *Hoke v. Tenn. Valley Auth.*, 854 F.2d 820, 825 (6th Cir. 1998) (quoting *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 130 (1940)). The enactment of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), ("APA"), broadened standing to sue in federal court for violations of bidding rules. *Club Italia*, 470 F.3d at 293-94. Still, the "APA represents an exception to the general rule that disappointed bidders do not have standing." *Id.* at 293. Mac has not argued in its briefs (nor alleged in its complaint) that it has standing under the APA, the APA in combination with § 85.36, the statue authorizing § 85.36, or any other

statute.[4] *See Coyne*, 183 F.3d at 494 (stating that the plaintiff has the burden of proving standing (citing *Valley Forge*, 454 U.S. at 472)). Rather, Mac relies on a federal regulation, § 85.36, for standing. R. 17 at 6-12. The regulation itself is not an act of Congress, and thus, it cannot show the legislature's intent. As such, there is no evidence that Congress attempted to give a disappointed bidder standing as Mac has presented its claim.

Assuming without deciding that a federal agency can confer standing, there is nothing in § 85.36 to suggest that the enacting federal agency was trying to provide a disappointed bidder standing. *See Diebold v. United States*, 947 F.2d 787, 807 n.12 (6th Cir. 1991) ("The most plausible reading of the first sentence [of the federal regulation] is that the agency itself is not trying to create judicial review.").[5] Warsaw agreed to comply with § 85.36 in one of the grants, the Kentucky Community Development Block Grant ("CDBG"), that will partially fund the projects. *Id*. at 6. To receive funds from the CDBG, Warsaw agreed to comply with 24 C.F.R. Part 85 "as [it] relates to the application, acceptance, and use of Federal funds." *Id*., Ex. B at 7-8.

---

[4] Perhaps, the APA demonstrates that Congress intended to give judicial review of violations of § 85.36. Courts have found that a disappointed bidder can refer to a federal regulation as a source of law if the disappointed bidder seeks standing under the APA. *See Diebold v. United States*, 947 F.2d 787, 802 (6th Cir. 1991) (noting that disappointed bidder cases "support the proposition that the procurement statutes and regulations function as a source of law for APA review and create 'law to apply'"). The APA specifically grants standing in those cases: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is *entitled to judicial review* thereof." 5 U.S.C. § 702 (emphasis added). But the effect of the APA on Mac's standing is not before the Court since Mac makes no mention of the APA anywhere.

[5] If a federal agency was trying to confer standing upon disappointed bidders without authorization from Congress, there may be a separation of powers issue. However, for the reasons stated in this opinion, there is no evidence that § 85.36 is an unauthorized attempt to expand disappointed bidder standing. Hence, there is no separation of powers issue in this case.

Part 85 sets forth the administrative requirements governing grants of the Department of Housing and Urban Development ("HUD") to local governments.[6] *Nat'l Ass'n of Minority Contractors, Dayton Chapter v. Martinez*, 248 F.Supp.2d 679, 684 (S.D. Ohio 2002). Section 85.36, which is listed in Part 85, states, among other things, the procurement standards and the methods of procurement that a grantee must follow.

While these provisions describe the procedure that HUD expects its grantees and subgrantees to follow, the provisions do not state that judicial review is a remedy for any violations. Mac argues that Warsaw violated three provisions of § 85.36. None of the three provisions demonstrate that a disappointed bidder has standing in federal court. The first requires that the "lowest responsive and responsible bidder" be awarded the contracts. § 85.36 (d)(2)(ii)(D). Mac contends that Warsaw violated this provision when it awarded the contracts to allegedly non-responsive bidders. The second provision requires that "[g]rantees and subgrantees will have protest procedures to handle and resolve disputes relating to their procurements." § 85.36(b)(12). Mac asserts that Warsaw, as a subgrantee, violated this provision because it did not have a protest procedure in place. Finally, Mac points out that Warsaw allegedly violated § 85.36(b)(11) because Warsaw did not settle "all contractual and administrative issues arising out of procurements." § 85.36(b)(11). These three provisions set up a scheme for administrative review for violations of the bidding rules—not for direct judicial review of a municipality's decision on procurement. Even if Warsaw violated the three cited

---

[6] From the record, it does not appear that any funds for Warsaw's projects would come directly from HUD. The HUD regulations are only relevant because the CDBG requires Warsaw to comply with the regulations to receive a grant.

11

provisions, none confer standing on Mac in this Court.

Mac cites *Martinez* to support its position, because the plaintiff there alleged that the defendants, including HUD, violated § 85.36 (among other things). 248 F. Supp.2d at 685-87. The court in *Martinez* issued a show cause order and did not decide the issue of standing. *Id.* at 691. The court noted that it had "serious doubts" about whether the claim was ripe or the plaintiff had suffered an injury. *Id.* at 690. *Martinez* offers no help to resolve the question of standing. In addition, the claims there appeared to arise under 42 U.S.C. § 1983. *Id.* at 690-91. Mac has not asserted a claim under § 1983. Thus, *Martinez* is inapposite.

Mac repeatedly points to *Rosetti v. Contracting Co., Inc. v. Brennan*, 508 F.2d 1039 (7th Cir. 1975), to show that it has a meritorious claim. Indeed, in that case, the court held that a bid was non-responsive because the bid did not include the appropriate commitment required for minority hiring. *Id.* at 1043. The merits of the claims are analogous to Mac's, since Mac alleges that the winning bids did not include information about the use of disadvantaged businesses. Yet, *Rosetti* does not show that Mac has standing to assert its claims against Warsaw. There, standing was not an issue since the plaintiff sought judicial review of a federal agency's decision under the APA. *Id.* at 1042 (citing 5 U.S.C. § 702). Again, Mac does not suggest in its complaint or briefs that it asserts standing based on the APA. As such, *Rosetti* provides no guidance on whether Mac has standing under § 85.36.[7]

Mac also cites *Prof'l Bldg. Concepts, Inc. v. City of Central Falls*, 974 F.2d 1 (1st Cir.

---

[7]     Similarly, the Illinois case that Mac cites, *Leo Michuda & Son v. Metro. Sanitary Dist. Of Greater Chicago*, 422 N.E.2d 1078 (Ill. App. 1981), is inapposite. That case applied Illinois law which is not at issue here.

12

1992) (*Central Falls II*), to support its position that it has standing under § 85.36. In that case, one of the plaintiffs argued that the city's housing authority violated § 85.36 because it did not award the contract to the lowest responsive bidder. *Id.* at 2-4. The city's housing authority's decision was ultimately affirmed. *Id.* at 4. While *Central Falls II* might guide the analysis if the Court reached the merits of Mac's claims, it does nothing to answer the question of standing. The standing issue was not before the First Circuit in *Central Falls II*. But, the district court opinion—not discussed in the parties' briefs here—did address jurisdiction. *See Prof'l Bldg. Concepts, Inc. v. City of Central Falls*, 783 F. Supp. 1558, 1561 (D. R.I. 1992) (*Central Falls I*). Though the disappointed bidder appealed a decision of the city's housing authority, *Central Falls I* held that the court had jurisdiction to "review and set aside federal agency action" under the APA. *Id.* (quoting 5 U.S.C. § 706(2)(A)). Because Mac does not assert that the APA provides standing for its claim, *Central Falls I* is also inapposite precedent.

Because Mac failed to cite a federal statute that evidences Congress intended to provide it standing, the Court must apply the "general rule" of the Sixth Circuit that, as a disappointed bidder, Mac does *not* have standing. *Club Italia*, 470 F.3d at 293. Moreover, nothing in § 85.36 suggests that the regulation was evidence that a federal agency was trying to confer standing on disappointed bidders.

## CONCLUSION

Mac failed to show that Warsaw adopted the necessary provisions of the KMPC, and thus, Mac cannot have standing to assert its claim under Kentucky law. Further, § 85.36 does not provide standing. Because Mac did not meet its burden to show it has standing, this action is

13

dismissed.

Accordingly, it is **ORDERED** as follows:

1) Mac's claims against Warsaw are **DISMISSED WITHOUT PREJUDICE**.

2) Any pending motions are **DENIED AS MOOT**.

3) This matter shall be **STRICKEN** from the Court's active docket.

4) This is a **FINAL** and **APPEALABLE** order.

This the 21st day of May, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge